**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CITY OF CINCINNATI** | : | **Case No. 1:15-CV-185** |
| **801 Plum Street** | : | |
| **Cincinnati, Ohio 45202** | : | **Senior Judge Sandra S. Beckwith** |
| | : | **Magistrate Judge Stephanie** |
| **And** | : | **Bowman** |
| | : | |
| **STATE OF OHIO ex rel.** | : | |
| **CITY SOLICITOR** | : | **SECOND AMENDED COMPLAINT** |
| **PAULA BOGGS MUETHING** | : | **FOR PRELIMINARY AND** |
| **801 Plum Street, Room 214** | : | **PERMANENT INJUNCTIVE,** |
| **Cincinnati, Ohio 45202** | : | **DECLARATORY RELIEF,** |
| | : | **APPOINTMENT OF A RECEIVER,** |
| **Plaintiffs/** | : | **AND DAMAGES** |
| **Relators,** | : | |
| | : | |
| **-vs-** | : | |
| | : | |
| **PE ALMS HILL REALTY LLC** | : | |
| **c/o Vcorp Agent Service, Inc.** | : | |
| **28602 Yeshiva Lane** | : | |
| **Wickliffe, Ohio 44092** | : | |
| | : | |
| **And** | : | |
| | : | |
| **PE ENTOWNE MANOR** | : | |
| **REALTY LLC** | : | |
| **c/o Vcorp Agent Services, Inc.** | : | |
| **28602 Yeshiva Lane** | : | |
| **Wickliffe, Ohio 44092** | : | |
| | : | |
| **And** | : | |
| | : | |
| **PE REIDS VALLEY VIEW** | : | |
| **REALTY LLC** | : | |
| **c/o Vcorp Agent Services, Inc.** | : | |
| **28602 Yeshiva Lane** | : | |
| **Wickliffe, Ohio 44092** | : | |
| | : | |
| **And** | : | |
| | : | |
| **PE SHELTON GARDENS** | : | |
| **REALTY LLC** | : | |
| **c/o Vcorp Agent Services, Inc.** | : | |

**28602 Yeshiva Lane**    :
**Wickliffe, Ohio 44092**   :
           :
    **And**    :
           :
**PE BURTON REALTY LLC** :
**c/o Vcorp Agent Services, Inc.** :
**28602 Yeshiva Lane**    :
**Wickliffe, Ohio 44092**   :
           :
    **And**    :
           :
**PF HOLDINGS LLC**    :
**c/o John Bowen**     :
**208 N. Scioto Street, Ste. 300** :
**Circleville, Ohio 43113**   :
           :
    **And**    :
           :
**ALMS RESIDENTS' ASSOCIATION** :
**2525 Victory Parkway**   :
**Cincinnati, Ohio 45206**   :
**c/o Legal Aid Society of Southwest** :
**Ohio, LLC**       :
**215 East Ninth Street, Ste. #200** :
**Cincinnati, Ohio 45202**   :
           :
    **And**    :
           :
**ENTOWNE MANOR RESIDENTS'** :
**ASSOCIATION**     :
**3652 Reading Road**    :
**Cincinnati, Ohio 45229**   :
**c/o Legal Aid Society of Southwest** :
**Ohio, LLC**       :
**215 East Ninth Street, Ste. #200** :
**Cincinnati, Ohio 45202**   :
           :
    **And**    :
           :
**2525 VICTORY PARKWAY**  :
**(In Rem)**       :
           :
    **And**    :
           :
**3652 READING ROAD (In Rem)** :
           :

|  |  |
|---|---|
| **And** | : |
|  | : |
| **1990 WESTWOOD NORTHERN BOULEVARD (In Rem)** | : |
|  | : |
| **And** | : |
|  | : |
| **2000 WESTWOOD NORTHERN BOULEVARD (In Rem)** | : |
|  | : |
| **And** | : |
|  | : |
| **1006 BURTON AVENUE (In Rem)** | : |
|  | : |
|  | : |
| **Defendants/ Respondents.** | : |
|  | : |

## SECOND AMENDED COMPLAINT

Now come Plaintiff City of Cincinnati and State of Ohio ex rel. City Solicitor Paula Boggs Muething (hereinafter collectively the "City"), and for their Second Amended Complaint against Respondents/Defendants PE Alms Hill Realty LLC; PE Entowne Manor Realty LLC; PE Reids Valley View Realty LLC; PE Shelton Gardens Realty LLC; and PE Burton Realty LLC, PF Holdings LLC (hereinafter collectively "the PE Defendants"), Alms Residents' Association, Entowne Manor Residents' Association and the real properties commonly known as 2525 Victory Parkway, 3652 Reading Road, 1990 Westwood Northern Boulevard, 2000 Westwood Northern Boulevard and 1006 Burton Avenue, located in the City of Cincinnati, Ohio, respectfully states as follows:

## PRELIMINARY STATEMENT AND INTRODUCTION

1. This action arises out of the failure of the PE Defendants to maintain their properties in the City of Cincinnati.

2.      The PE Defendants are owners of occupied rental properties that have a project-based subsidy from the Department of Housing and Urban Development ("HUD").

3.      The properties that are owned by the PE Defendants and which are at issue in this case are  2525 Victory Parkway, 3652 Reading Road, 1990 Westwood Northern Boulevard, 2000 Westwood Northern Boulevard and 1006 Burton Avenue ("the PE Properties").

4.      The City has issued numerous orders to the PE Defendants for code violations of the health, fire and building code at the PE Properties.

5.      The City has received complaints from the tenant residents at the PE Properties concerning potential health, fire and building code violations at the premises.

6.      The PE Properties have had high numbers of calls for service from the Cincinnati Police Department ("CPD").

7.      The City has received complaints from the tenant residents at the PE Properties and other community members concerning police activity and concerns for safety at the PE Properties.

8.      The City wishes to see code violations and safety issues at the PE Properties remedied and the properties to continue to provide a source of safe, decent and affordable housing for Cincinnati residents by virtue of the project-based subsidy provided by HUD.

9.      The City brings this action on behalf of itself and its residents to obtain injunctive and declaratory relief under the Ohio Revised Code ("ORC"), Cincinnati Municipal Code ("CMC") and common law in order to ensure that the code violations at

the PE Properties are abated, as well as to recover any outstanding fines, fees and the City's costs associated with these violations.

## THE PARTIES

10.     Plaintiff City of Cincinnati is a home-rule municipal corporation chartered under Article XVIII, Section 7 of the Ohio Constitution and acting pursuant to the Charter of the City of Cincinnati, through its City Solicitor.  The City is located in Hamilton County, Ohio.

11.     Relator City Solicitor Paula Boggs Muething is the duly appointed and qualified acting City Solicitor of the City of Cincinnati and is a party charged by R.C. 3767.03 with the prevention, prosecution and abatement of any public nuisance within the City of Cincinnati.

12.     Upon information and belief, Defendant PE Alms Hill Realty LLC (hereinafter "PE Alms") is and has been at all times relevant to this action, the owner and/or a person in control of 2525 Victory Parkway, Cincinnati, Ohio. PE Alms is an Ohio limited liability corporation.

13.     Upon information and belief, Defendant PE Entowne Manor Realty LLC (hereinafter "PE Entowne Manor"), is and has been at all times relevant to this action, the owner and/or a person in control of 3652 Reading Road, Cincinnati, Ohio. PE Entowne Manor is an Ohio limited liability corporation.

14.     Upon information and belief, Defendant PE Reids Valley View Realty LLC (hereinafter "PE Reids Valley"), is and has been at all times relevant to this action, the owner and/or a person in control of 1990 Westwood Northern Boulevard, Cincinnati, Ohio. PE Reids Valley is an Ohio limited liability corporation.

15.     Upon information and belief, Defendant PE Shelton Gardens Realty LLC (hereinafter "PE Shelton Gardens") is and has been at all times relevant to this action, the owner and a person in control of 2000 Westwood Northern Boulevard, Cincinnati, Ohio. PE Shelton Gardens is an Ohio limited liability corporation.

16.     Upon information and belief, Defendant PE Burton Realty LLC (hereinafter "PE Burton") is and has been at all times relevant to this action, the owner and a person in control of 1006 Burton Avenue, Cincinnati, Ohio. PE Burton is an Ohio limited liability corporation.

17.     Upon information and belief, Defendant PF Holdings LLC (hereinafter "PF Holdings") is and has been at all times relevant to this action, a person in control of 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard, and 1006 Burton Avenue, Cincinnati, Ohio as the management company for the properties. PF Holdings is an Ohio limited liability corporation.

18.     Upon information and belief, real property that is the subject matter of this action is addressed as 2525 Victory Parkway, Cincinnati, Ohio on parcel number 066-0001-0129-00 as identified by the Hamilton County Auditor, upon which is constructed a residential, multi-family building. The building at 2525 Victory Parkway is commonly referred to as "the Alms."

19.     Upon information and belief, real property that is the subject matter of this action is commonly known as 3652 Reading Road, Cincinnati, Ohio on parcel number 108-0004-0005-00 as identified by the Hamilton County Auditor, upon which is constructed a residential, multi-family building. The building at 3652 Reading Road is commonly referred to as "Entowne Manor."

20.     Upon information and belief, real property that is the subject matter of this action is commonly known as 1990 Westwood Northern Boulevard, Cincinnati, Ohio on parcel number 206-0001-0035-00 as identified by the Hamilton County Auditor, upon which is constructed a residential, multi-family building. The building at 1990 Westwood Northern Boulevard is commonly referred to as "Reids Valley."

21.     Upon information and belief, real property that is the subject matter of this action is addressed as 2000 Westwood Northern Boulevard, Cincinnati, Ohio on parcel number 206-0001-0034-00 as identified by the Hamilton County Auditor, upon which is constructed a residential, multi-family building. The building at 2000 Westwood Northern Boulevard is commonly referred to as "Shelton Gardens."

22.     Upon information and belief, real property that is the subject matter of this action is addressed as 1006 Burton, Cincinnati, Ohio on parcel number 108-0005-0045-00 as identified by the Hamilton County Auditor, upon which is constructed a residential, multi-family building. The building at 1006 Burton is commonly referred to as "Burton."

23.     The Alms Residents' Associated has moved to intervene in this case. (Doc. 8).  That motion is pending.

24.     Upon information and belief, the Alms Residents' Association has an interest in the outcome of litigation involving living conditions inside 2525 Victory Parkway, Cincinnati, Ohio as the entity whose mission is the preservation of safe, decent and affordable housing  at the Alms for its members, and whose membership is comprised solely of tenants living at the Alms who, individually, have contractual rights with regard to maintenance at the building pursuant to leases agreements with PE Alms.

25.     Upon information and belief, the Entowne Manor Residents' Association has an interest in the outcome of litigation involving living conditions inside 3652 Reading Road, Cincinnati, Ohio as the entity whose mission is the preservation of safe, decent and affordable housing at Entowne Manor for its members, and whose membership is comprised solely of tenants living at Entowne Manor who, individually, have contractual rights with regard to maintenance at the building pursuant to leases agreements with PE Entowne Manor.

## JURISDICTION AND VENUE

26.     This matter was filed in the Court of Common Pleas for Hamilton County, Ohio on February 15, 2015 asserting claims under state and local law, namely Chapter 3767 of the Ohio Revised Code and common law nuisance claims. (Doc. 3).

27.     On March 17, 2015, the United States Department of Housing and Urban Development removed this action to United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1442. (Doc. 1).

28.     On June 15, 2015, the City voluntarily dismissed the United States Department of Housing and Urban Development from this action.  (Doc. 12).

29.     The federal court lacks subject matter jurisdiction as there is no longer an agency of the United States as a party defendant, there is no diversity of citizenship between the parties, and no question of federal law is implicated by the Complaint.

## STATEMENT OF FACTS

30.     On May 7, 2013, the PE Defendants acquired over 600 units of rental housing in the City of Cincinnati, spread across over ten (10) multi-family complexes.

31.     The PE Defendants' May 2013 acquisition included the five (5) PE Properties that are the subject of this lawsuit and which are located as 2000 Westwood

Northern Boulevard, 1990 Westwood Northern Boulevard, 3652 Reading Road, 2525 Victory Parkway and 1006 Burton Avenue.

32.     While the PE Properties are held in an individual business entity, upon information and belief, PF Holdings is the umbrella company that owns and controls each business entity, as well as the local management entity for all the properties.

33.     PE Properties' rental units are one of the only sources of affordable housing for families in the City of Cincinnati.

34.     Residents at the PE Properties pay rent based on income and the difference is covered by the U.S. Department of Housing and Urban Development ("HUD") in the form of a project-based subsidy paid directly to the PE Defendants.

35.     Since the purchase of the PE Properties in 2013, the City has received numerous complaints from tenants regarding substandard housing conditions at a number of the buildings.

36.     The PE Defendants have failed to remediate the building hazards and criminal activity at the PE Properties in a timely manner.

37.     In the time since PE Defendants purchased the PE Properties, they have ignored criminal activity and complaints of criminal activity from tenants, terminated the right of the police department to enter their properties to investigate criminal activity, instructed security to not report domestic violence to the police, failed to properly enforce their lease to remedy criminal activity, failed to engage screening procedures to keep applicants for tenancy who had criminal or behavior problems out of the buildings, and willfully attempted to conceal building hazards from building inspectors.

38.     The City has an interest in ensuring that residents at the PE Properties, particularly those with active resident associations, are protected in their ability to organize, to bring problems to the PE Defendants' attention, and to reside in their homes free from retaliation.

39.     The City has an interest in ensuing that residents at the PE Properties can continue to reside at those properties as affordable housing for individuals and families with children by virtue of the valuable project-based subsidy from HUD.

40.     The City's interest in the well-being of the residents at the PE Properties and in their ability to continue living at those properties as safe, decent and affordable housing is consistent with the City's goal to promote equitable and affordable housing, as set forth in the City's November 2012 Comprehensive Plan ("Plan Cincinnati").

**The Alms Hill Apartments – 2424 Victory Parkway**

41.     The Alms Hill Apartment Building is a multi-family structure located at 2424 Victory Parkway in the Walnut Hills neighborhood of the City of Cincinnati.

42.     The Alms provides affordable housing to approximately two hundred (200) families through federal HUD project-based housing subsidies for each unit that houses a qualified resident.

43.     Since PE Alms purchased the Alms in May 2013, the City has had increasing concerns about both criminal activity and nuisance conditions at the property.

44.     In September 2014, CPD officers responded to the Alms for a series of calls regarding firearms and shots fired.

45.     While responding to incidents at the Alms, police officers witnessed concerning health and safety conditions and referred their concerns to the neighborhood liaison unit for the district for follow up.

46.     On October 24, 2014, neighborhood officers inspected the Alms and reviewed the issues with Alms management, including issues related to mold, water damage, and defective plumbing.

47.     On October 28, 2014, Capt. Maris Herold, CPD's district commander, and Law Department staff met with Alms management to discuss termination of the on-site security staff and various unsanitary conditions existing in the building.

48.     During the meeting, PE Alms committed to allowing a comprehensive inspection of the building, if the concerns were not addressed.

49.     On December 1, 2014, neighborhood officers conducted a follow up visit and found little progress had been made.

50.     The City asked PE Alms if they could inspect the entire building based on health and safety concerns.

51.     Contrary to its previous statements, PE Alms refused.

52.     The PE Defendants subsequently terminated CPD's right of entry for all their properties (prohibiting the police from entering their building to address criminal activity) and indicated that the City would be required to obtain a search warrant to engage in an inspection of the Alms.

53.     It was not until mid-June 2015 that the PE Defendants indicated any willingness to reinstate CPD's right of entry for all of their properties.

54.     On December 4, 2014, the City executed an administrative search warrant at the Alms, inspecting all the areas under the owner's control and occupied units if the tenant consented in writing.

55.     During the execution of the warrant, police officers and inspectors found walls had been erected over areas of the building that police had previously found health and safety hazards, in an attempt to conceal building code violations.

56.     Following the inspection, twenty-nine pages of orders were written regarding property conditions, including orders on every occupied unit that was viewed by City inspectors, with the consent of the resident, comprising twenty-five percent of the overall units. (Attached as Exhibit A).

57.     Shortly after the search warrant, PE Alms installed reflective tape over the front entry doors in an attempt to conceal activity occurring inside the building, which also created a safety hazard for police officers responding to calls for service.

58.     On December 16, 2014, the City notified PE Alms that it must correct the cited conditions within sixty days.

59.     On April 17, 2015, the U.S. Department of Housing and Urban Development ("HUD") conducted its own inspection of the physical conditions of the Alms.

60.     Ultimately, HUD gave the Alms a failing score on the inspection: a 49c*, meaning there were critical violations found within the building, including but not limited to missing smoke detectors, bed bugs, peeling paint, cracks in walls, missing or damaged appliances, missing or damage cabinets, missing emergency lighting, and tripping hazards. (Attached as Exhibit B).

61.     Sub-standard housing conditions are still pervasive at the Alms – both in common areas and in individual units.

62.     The occupied units contained within the Alms contain violations of Chapter 1117 of the CMC including roach infestations, broken cabinets, plumbing damage water leaks, mold, inadequate heat, defective windows, and plaster damage.

63.     The elevators for the Alms are in a state of disrepair and are regularly inoperable.

64.     On June 23, 2015, inspectors for the City found that accumulated dirt, grease and oil on the elevators presented a significant fire hazard and ordered the conditions to be corrected within 30 days or the elevators would be sealed.

65.     In addition, residents of the Alms and the Alms Residents' Association indicate that they have not received a satisfactory response or the necessary corrective action from PE Alms and have complained of intimidation by the management.

66.     The City has concerns that PE Alms is retaliating against the residents of the Alms in violation of local, state and federal laws.

67.     The City has an interest in ensuring that there is adequate access to safe, affordable and decent housing for its low-income residents, including those tenants residing at the Alms, and that they can live in an environment that is free of retaliation. The City has also noted concerns about criminal activity and a high volume of calls for service to CPD for the Alms.

68.     Since Defendant PE Alms purchased the Alms in May of 2013, there have been over 346 calls for service to CPD from the location.

69.     In that same time span, there have been seventy-one (71) reported offenses (including three felonious assaults) and fifty (50) arrests, including one drug related offense at the location.

70.     On July 16, 2013, Kenneth Roller, while voluntarily intoxicated, did engage in conduct likely to cause inconvenience to a person of ordinary sensibilities in violation of R.C. 2917.11 at the Alms.

71.     On September 3, 2013, Tyressa Powell did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

72.     On September 2, 2013, Masias Jones did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

73.     On September 3, 2013, Dasha Powell did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

74.     On September 21, 2013, Larhonda Price and Alfonso Martin did torture or abuse a minor child in violation of R.C. 2919.22 at the Alms.

75.     On November 18, 2013, Dewayne Lee and Kenneth Roller while voluntarily intoxicated, did engage in conduct likely to cause inconvenience to a person of ordinary sensibilities in violation of R.C. 2917.11 at the Alms.

76.     On February 21, 2014, Jason Kuss did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

77.     On April 8, 2014, Jason Montgomery did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

78.     On April 21, 2014, Terrance Wisdom did knowingly possess a controlled substance in violation of R.C. 2925.11 at the Alms.

79. On June 25, 2014, Demarcus King did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

80. On July 21, 2014 John Cook did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

81. On July 23, 2014, Aljalon Turner did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

82. On September 14, 2014, Kenneth Roller did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

83. On September 16, 2014, John Lee did knowingly cause serious physical harm to another person in violation of R.C. 2903.11 at the Alms.

84. On September 29, 2014, Qwuan Long did knowingly cause physical harm to another person in violation of R.C. 2903.13 and possess a concealed firearm in violation of R.C. 2923.12 at the Alms.

85. On October 24, 2014, Brian McGrady did knowingly cause serious physical harm to another person in violation of R.C. 2903.11 at the Alms.

86. On December 14, 2014, Sonny Pierre Gardner did knowingly possess a firearm while under disability in violation of R.C. 2923.13.

87. On February 27, 2015, HUD conducted a Management and Occupancy Review ("MOR") of the Alms. (Attached as Exhibit C).

88. The MOR review determined that security locks should be added to the main entry doors and stairwells as well as additional cameras throughout the building; there was improper screening of tenants resulting in housing of tenants who might interfere with the health, safety, or right to quiet enjoyment of the premises by other residents; there was not proper execution of HUD paperwork; half of the tenant files

there were reviewed lacked income verification documentation; and work orders were ignored, improperly recorded, or closed without work being completed.

89.     The HUD review concluded the owner's procedures for maintenance as well as leasing and occupancy ratings were below average.

90.     Police were also informed by security officers for the Alms that the security had been instructed to not report domestic violence incidents to the police.

91.     Management also received reports that a tenant had set up a recording studio in apartment 606 of the Alms and there was drug use in the unit witnessed by third parties.

92.     On April 14, 2015, Tajuan Zanders did knowingly cause physical harm to another person in violation of R.C. 2903.13 at the Alms.

93.     On April 22, 2015, an unidentified male did traffic in a controlled substance, to wit marijuana, in violation of R.C. 2925.03 from #702 of 2525 Victory Parkway.

94.     On April 27, 2015, Anthony Jewell Washington did with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, hampered or impeded a public official in the performance of the public official's lawful duties in violation of R.C. 2921.31 at the Alms.

95.     2525 Victory Parkway has been issued an initial notice of nuisance activity under the Chapter 761 of the CMC, Chronic Nuisance Premises.

96.     2525 Victory Parkway does not have a current abatement plan as required by CMC Section 761-3.

97.     The code violations, violence and nuisance conditions continue unabated at the Alms.

**Shelton Gardens - 2000 Westwood Northern Boulevard**

98.    The Shelton Gardens Apartment Building is a multi-family structure located at 2000 Westwood Northern Boulevard in the English Woods neighborhood of the City of Cincinnati.

99.    Shelton Gardens provides affordable housing to approximately one hundred and thirty-seven (137) families through federal HUD project-based housing subsidies for each unit that houses a qualified resident.

100.    Since PE Shelton Gardens purchased Shelton Gardens in May 2013, the City has had increasing concerns about both criminal activity and nuisance conditions at the property.

101.    Upon information and belief, there exists at 2000 Westwood Northern Boulevard violations of Chapter 1117 of the CMC including but not limited to missing smoke detectors, defective fire doors, damaged plaster, inadequate lighting, damaged floor coverings and broken or missing windows in the common areas, as well as defective, broken or damaged plaster, windows, smoke detectors, electrical fixtures, kitchen sink units, and toilet on individual units.

101.    Since PE Shelton Gardens purchased 2000 Westwood Northern Boulevard in May of 2013, there have been over 1,012 calls for service to the CPD from the location.

102.    CPD regularly makes arrests for violent and drug offenses at Shelton Gardens. In that same time span, there have been eighty-five (85) reported offenses, seventy-five (75) arrests, including twenty-one (21) drug related offenses at the location.

103.    On May 9, 2015, Derrick Nelms did knowingly possess a controlled substance in violation of R.C. 2925.11 at 2000 Westwood Northern Boulevard.

104.    On May 14, 2013, Eric Harris did knowingly possess a controlled substance in violation of R.C. 2925.11 and did knowingly possess drug paraphernalia in violation of R.C. 2925.14 at 2000 Westwood Northern Boulevard.

105.    On May 22, 2013, Gerald Louis Anderson did knowingly possess drug paraphernalia in violation of R.C. 2925.14 at 2000 Westwood Northern Boulevard.

106.    On June 11, 2013, Brandon Medley did knowingly cause physical harm to another person in violation of R.C. 2903.03 at 2000 Westwood Northern Boulevard.

107.    On July 4, 2013, Gregory Hinkston did knowingly cause physical harm to another person in violation of R.C. 2903.03 at 2000 Westwood Northern Boulevard.

108.    On July 10, 2013, Yolanda Wilson did knowingly cause physical harm to another person in violation of R.C. 2903.03 at 2000 Westwood Northern Boulevard.

109.    On October 1, 2013, Kara Robertson did knowingly cause serious physical harm to another person in violation of R.C. 2903.11 at 2000 Westwood Northern Boulevard.

110.    On February 3, 2014, Demetrius Williams did knowingly cause serious physical harm to another person in violation of R.C. 2903.11 at 2000 Westwood Northern Boulevard.

111.    On February 23, 2014, Latress Long did knowingly cause physical harm to another person in violation of R.C. 2903.03 at 2000 Westwood Northern Boulevard.

112.    On February 28, 2014, Ben Hess did knowingly possess a controlled substance in violation of R.C. 2925.11 and resist arrest at 2000 Westwood Northern Boulevard.

113. On April 27, 2014, Antwain Jones did knowingly possess a counterfeit controlled substance and drug paraphernalia in violation of R.C. 2925.14 at 2000 Westwood Northern Boulevard.

114. On August 2, 2014, Kevin Johnson did create a loud noise that unreasonably disrupted the peace of the neighborhood in violation of CMC Section 909-3.

115. On August 13, 2014, Mariah Miller did knowingly cause serious physical harm to another person in violation of R.C. 2903.11 at 2000 Westwood Northern Boulevard.

116. On August 27, 2014, Charles Sullivan did knowingly cause physical harm to another person in violation of R.C. 2903.03 at 2000 Westwood Northern Boulevard.

117. On September 11, 2014, Elysia Bowling did knowingly possess drug paraphernalia in violation of R.C. 2925.14 at 2000 Westwood Northern Boulevard.

118. On September 11, 2014, Charles Murray did knowingly possess drug paraphernalia in violation of R.C. 2925.14 at 2000 Westwood Northern Boulevard.

119. On September 20, 2014, Molly Kennedy did knowingly possess a controlled substance in violation of R.C. 2925.11 and knowingly possess a drug abuse instruments in violation of R.C. 2925.12 at 2000 Westwood Northern Boulevard.

120. On September 23, 2014, Jeremy Berry did knowingly possess a controlled substance in violation of R.C. 2925.11 and knowingly possess a drug abuse instruments in violation of R.C. 2925.12 at 2000 Westwood Northern Boulevard.

121. On September 30, 2014, Sharon Jones did knowingly sell alcohol without a permit in violation of R.C. 4399.09 from #115 of 2000 Westwood Northern Boulevard.

122.   On October 2, 2014, Larry Mathis did knowingly sell alcohol without a permit in violation of R.C. 4399.09 from #124 of 2000 Westwood Northern Boulevard.

123.   On October 7, 2014, Maurice Jones did knowingly sell alcohol without a permit in violation of R.C. 4399.09 from #115 of 2000 Westwood Northern Boulevard.

124.   On October 17, 2014, Doneisha Saturday and Larry Mathis were arrested for selling alcohol without a permit in violation of R.C. 4399.09 from #124 at 2000 Westwood Northern Boulevard.

125.   On October 17, 2014, Maurice Jones and Sharon Jones were arrested for selling alcohol without a permit in violation of R.C. 4399.09 from #115 at 2000 Westwood Northern Boulevard.

126.   Officer Robert Wilson spoke with the management of 2000 Westwood Northern Boulevard shortly thereafter and notified them of the pending charges against Jones, Mathis, and Saturday.

127.   On December 18, 2014, Officer Robert Wilson was able to confirm Jones had not been evicted from #115 of 2000 Westwood Northern Boulevard.

128.   On December 30, 2014, a confidential informant working at the direction and control of Officer Wilson purchased alcohol from an unidentified individual inside #103 of 2000 Westwood Northern Boulevard in violation of R.C. 4399.09.

129.   On January 6, 2015, Devoin Hunter did knowingly sell alcohol without a permit in violation of R.C. 4399.09 from # 131 of 2000 Westwood Northern Boulevard.

130.   On January 8, 2015, Charles Sullivan sold a controlled substance in violation of R.C. 2925.03 from #103 of 2000 Westwood Northern Boulevard.

131.   On January 22, 2015, Charles Sullivan sold a controlled substance in violation of R.C. 2925.03 from #103 of 2000 Westwood Northern Boulevard.

132.    On January 22, 2015, Devoin Hunter did knowingly sell alcohol without a permit in violation of R.C. 4399.09 from # 131 of 2000 Westwood Northern Boulevard.

133.    On January 22, 2015, Maurice Jones did sell alcohol without a permit in violation of R.C. 4399.09 from #115 of 2000 Westwood Northern Boulevard.

134.    On February 3, 2015, Maurice Jones did sell alcohol without a permit in violation of R.C. 4399.09 from #115 of 2000 Westwood Northern Boulevard.

135.    On February 4, 2015, a search warrant was executed at #115 of 2000 Westwood Northern Boulevard. Maurice Jones was arrested for possession a firearm while under disability, selling alcohol without a permit, keeping a place where liquor is sold in violation of the law, and possession of a controlled substance.

136.    On February 11, 2015, Angela Pharr did knowingly sell a controlled substance in violation of R.C. 2925.03 at #147 of 2000 Westwood Northern Boulevard.

137.    On February 11, 2015, Brian Ciers did knowingly sell a controlled substance in violation of R.C. 2925.03 at #324 of 2000 Westwood Northern Boulevard.

138.    February 12, 2015, Officer Robert Wilson confirmed Donisha Saturday was not evicted from #124 of 2000 Westwood Northern Boulevard.

139.    On February 17, 2015, Angela Pharr did knowingly sell a controlled substance in violation of R.C. 2925.03 at #147 of 2000 Westwood Northern Boulevard.

140.    On February 17, 2015, an unknown person did knowingly sell a controlled substance in violation of R.C. 2925.03 at #131 of 2000 Westwood Northern Boulevard.

141.    On February 18, 2015, a search warrant was executed at #131 of 2000 Westwood Northern Boulevard. Officers recovered cocaine, marijuana, liquor and a pistol.

142.    On February 18, 2015, a search warrant was executed at #147 of 2000 Westwood Northern Boulevard. Officers recovered cocaine, marijuana, a shotgun, a rifle and a pistol and charged Angela Pharr for trafficking in a controlled substance in violation of R.C. 2925.03.

143.    On February 18, 2015, Sergeant Kara Graves contacted the management of 2000 Westwood Northern Boulevard regarding damage from SWAT's entry to #147 of 2000 Westwood Northern Boulevard.

144.    On February 19, 2015, copies of the search warrants were provided by Officer Robert Wilson to the management of 2000 Westwood Northern Boulevard.

145.    On March 2, 2015, William Jackson was charged with permitting drug trafficking from #103 of 2000 Westwood Northern Boulevard as well as keeping a place where alcohol is kept in violation of the law in violation of R.C. 4399.09.

146.    In early May 2015, the management of 2000 Westwood Northern Boulevard confirmed to Officer Robert Wilson that tenants involved in criminal activity had not been evicted.

147.    2000 Westwood Northern Boulevard has been issued an initial notice of nuisance activity under the Chapter 761 of the CMC, Chronic Nuisance Premises.

148.    However 2000 Westwood Northern Boulevard does not have a current abatement plan as required by CMC Section 761-3.

149.    The code violations, violence and nuisance conditions continue unabated at 2000 Westwood Northern Boulevard.

**Reids Valley Apartments - 1990 Westwood Northern Boulevard**

150.     The Reids Valley View Apartment Building is a multi-family structure located at 1990 Westwood Northern Boulevard in the English Woods neighborhood of the City of Cincinnati.

151.     Reids Valley provides affordable housing to approximately one hundred and fourteen (114) families through federal HUD project-based housing subsidies for each unit that houses a qualified resident.

152.     Since PE Reids Valley purchased the Reids Valley in May 2013, the City has had increasing concerns about both criminal activity and nuisance conditions at the property.

153.     There exists at 1990 Westwood Northern Boulevard violations of Chapter 1117 of the CMC including, but not limited to, missing smoke detectors, defective fire doors, damaged plaster, inadequate lighting, damaged floor coverings and broken or missing windows in the common areas, as well as defective, broken or damaged plaster, windows, smoke detectors, electrical fixtures, kitchen sink units, and toilet on individual units.

154.     Since PE Reids Valley purchased 1990 Westwood Northern Boulevard in May 2013, there have been over 665 calls for service to the CPD from the location.

155.     CPD regularly makes arrests for violent and drug offenses. In that same time span, there have been sixty-seven (67) reported offenses and sixty-six (66) arrests, including fourteen (14) drug related offenses at the location.

156.     On May 15, 2013, Linda Willham did knowingly possess a prescription drug in violation of CMC 601-23, knowingly possess a controlled substance in violation

of R.C. 2925.11, and knowingly possess drug paraphernalia in violation of R.C. 2925.14 at 1990 Westwood Northern Boulevard.

157.    On May 15, 2013, Bobby Perry did knowingly possess a controlled substance in violation of R.C. 2925.11 at 1990 Westwood Northern Boulevard.

158.    On June 11, 2013, Derrick Franklin did knowingly traffic in a controlled substance in violation of R.C. 2925.03 at 1990 Westwood Northern Boulevard.

159.    On June 19, 2013, Sean Early did knowingly possess a controlled substance in violation of R.C. 2925.11 and did knowingly possess a drug abuse instrument in violation of R.C. 2925.12 at 1990 Westwood Northern Boulevard.

160.    On June 24, 2013, Gary Kimla did knowingly possess a drug abuse instrument in violation of R.C. 2925.12 at 1990 Westwood Northern Boulevard.

161.    On June 30, 2013, Nicole Broadus did knowingly cause another to believe that the offender will cause serious physical harm to the person in violation of R.C. 2903.21 at 1990 Westwood Northern Boulevard.

162.    On July 9, 2013, Andrew Sanders did knowingly cause another to believe that the offender will cause serious physical harm to the person in violation of R.C. 2903.21 at 1990 Westwood Northern Boulevard.

163.    On July 11, 2013, Ardashia Patton did knowingly cause physical harm to another in violation of R.C. 2903.03 at 1990 Westwood Northern Boulevard.

164.    On July 25, 2013, Sean Kirksey did knowingly cause physical harm to another in violation of R.C. 2903.03 at 1990 Westwood Northern Boulevard.

165.    On August 10, 2013, Lorenzo Wilson did knowingly possess a controlled substance in violation of R.C. 2925.11 at 1990 Westwood Northern Boulevard.

166.    On August 12, 2013, Tyler Taylor did knowingly possess a controlled substance in violation of R.C. 2925.11 at 1990 Westwood Northern Boulevard.

167.    On December 10, 2013, Antwan Blythe did knowingly engage in sexual conduct by force in violation of R.C. 2907.02(A) at 1990 Westwood Northern Boulevard.

168.    On April 22, 2014, Renee Newbill did knowingly cause physical harm to another in violation of R.C. 2903.03 at 1990 Westwood Northern Boulevard.

169.    On June 17, 2014, Matthew Colvin did knowingly traffic in a controlled substance in violation of R.C. 2925.03 at 1990 Westwood Northern Boulevard.

170.    On August 3, 2014, Renee Newbill did knowingly cause physical harm to another in violation of R.C. 2903.03 at 1990 Westwood Northern Boulevard.

171.    On August 26, 2014, Chandri Wathel did knowingly endanger her child by leaving her child unattended while fleeing from police due to open arrest warrants at 1990 Westwood Northern Boulevard.

172.    On April 8, 2015, Teana West did knowingly cause physical harm to another in violation of R.C. 2903.03 at 1990 Westwood Northern Boulevard.

173.    On April 6, 2015, Scott Beer did knowingly possess a controlled substance in violation of R.C. 2925.11 at 1990 Westwood Northern Boulevard.

174.    1990 Westwood Northern Boulevard has been issued an initial notice of nuisance activity under the Chapter 761 of the CMC, Chronic Nuisance Premises.

175.    1990 Westwood Northern Boulevard does not have a current abatement plan as required by CMC Section 761-3.

176.    The code violations, violence and nuisance conditions continue unabated at 1990 Westwood Northern Boulevard.

**Entowne Manor Apartments - 3652 Reading Road**

177.   The Entowne Manor Apartment Building is a multi-family structure located at 3652 Reading Road in the Avondale neighborhood of the City of Cincinnati.

178.   Entowne Manor provides affordable housing to approximately ninety-four (94) families through federal HUD project-based housing subsidies for each unit that houses a qualified resident.

179.   Since PE Entowne purchased Entowne Manor in May 2013, the City has had increasing concerns about both criminal activity and nuisance conditions at the property.

180.   There exists at 3652 Reading Road violations of Chapter 1117 of the CMC including but not limited to collapsed apartment ceiling due to water leakage; missing smoke detectors; missing fire door hardware; loose and water damaged plaster; damaged and/or dirty flooring; broken plumbing fixtures such as sinks and toilets; damaged exit and hall lighting; missing fire door signage; disconnected downspouts; obstructed fire exists; broken electrical fixtures such as lights; broken masonry walls; broken locks on apartment doors; and broken floor covering throughout the building.

181.   On June 26, 2015, the City issued emergency orders to the PE Defendants to immediately repair code violations in an occupied unit in which the ceiling had collapsed due to a leak in the roof.

182.   There exists at 3652 Reading Road violations of Chapter 1201 (Cincinnati Fire Prevention Code) and 1601 (Quality of Life) of the CMC including but not limited to defective emergency lighting, exit signs and self-closing devices on fire doors in the common areas; missing fire doors in the common areas; un-illuminated and missing exit signs in the common areas; additionally, the security gates on the properties

{00174913-2}                                    26

driveway prevents occupants' egress to the public right of way; in individual units, defective emergency escape openings, defective electrical outlets and fixtures and holes in the walls and ceilings.

183.    Upon information and belief, there exists at 3652 Reading Road violations of the Cincinnati Housing Code related to unsanitary conditions in the general area of trash and debris, as well as problems in individual units with roaches, vermin and bed bugs.

184.    Since PE Entowne Manor purchased 3652 Reading Road in May of 2013, there have been over 721 calls for service to the CPD from the location.

185.    CPD regularly makes arrests for violent and drug offenses. In that same time span, there have been fifty-six (56) reported offenses (including six (6) felonious assaults, a murder, a sexual battery, and a discharge of a firearm into a habitation), and fifty-one (51) arrests, including ten (10) drug related offenses at the location.

186.    On August 30, 2013, Dianna Ruff did knowingly possess a controlled substance in violation of R.C. 2925.11 at 3652 Reading Road.

187.    On September 9, 2013, Damon Long did knowingly cause physical harm to another and take his property by force in violation of R.C. 2911.02 at 3652 Reading Road.

188.    On September 3, 2013, Lashunda Livingston did knowingly cause serious physical harm to another in violation of R.C. 2903.11 at3652 Reading Road.

189.    On September 6, 2013, Antonio Kidd, while voluntarily intoxicated, did engage in conduct likely to cause inconvenience to a person of ordinary sensibilities in violation of R.C. 2917.11 at 3652 Reading Road.

190. On September 25, 2013, Josh Maxton did knowingly cause physical harm to another in violation of R.C. 2903.03 at 3652 Reading Road.

191. On November 16, 2013, Damieon Jones did knowingly possess a controlled substance in violation of R.C. 2925.11 at 3652 Reading Road.

192. On February 3, 2014, Chloe James did knowingly possess a controlled substance in violation of R.C. 2925.11 at 3652 Reading Road.

193. On March 15, 2014, Tyshawn Cole did with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, hampered or impeded a public official in the performance of the public official's lawful duties in violation of R.C. 2921.31 at 3652 Reading Road.

194. On March 18, 2014, Latisha Carter, while voluntarily intoxicated, did engage in conduct likely to cause inconvenience to a person of ordinary sensibilities in violation of R.C. 2917.11 at 3652 Reading Road.

195. On June 22, 2014, Mark Richardson did knowingly cause physical harm to another in violation of R.C. 2903.03 at 3652 Reading Road.

196. On July 14, 2014, Demarco Stewart did knowingly possess drug paraphernalia in violation of R.C. 2925.14 at 3652 Reading Road.

197. On July 30, 2014, Jemal Thompkins did by force trespass in #105 of 3652 Reading Road with purpose to commit a criminal offenses and inflicted physical harm upon a person in violation of R.C. 2911.11.

198. On July 21, 2014, Antonio Kidd did knowingly cause physical harm to another in violation of R.C. 2903.03 at 3652 Reading Road.

199. On October 21, 2014, Damien Jones did knowingly possess a controlled substance in violation of R.C. 2925.11 at 3652 Reading Road.

200.    On October 31, 2014, evictions filed against problem tenants were dismissed because the owner continued to take rent from the tenants and the tenants were not issued proper notices.

201.    On November 22, 2014, Damon Long did knowingly possess a controlled substance in violation of R.C. 2925.11 at 3652 Reading Road.

202.    On November 12, 2014, Rasheed Green did knowingly possess a controlled substance in violation of R.C. 2925.11 at 3652 Reading Road.

203.    On January 14, 2015, Mark Chambers did purposely cause the death of another person in violation of R.C. 2903.02 at 3652 Reading Road.

204.    On January 1, 2015 Ciera Pate, while voluntarily intoxicated, did engage in conduct likely to cause inconvenience to a person of ordinary sensibilities in violation of R.C. 2917.11 at 3652 Reading Road.

205.    On January 2, 2015, Ramonda Hill, while voluntarily intoxicated, did engage in conduct likely to cause inconvenience to a person of ordinary sensibilities in violation of R.C. 2917.11 at 3652 Reading Road.

206.    On February 11, 2015, Nieisha Ward did recklessly cause inconvenience, annoyance or alarm to another by fighting in violation of R.C. 2917.11 at 3652 Reading Road.

207.    On February 11, 2015, Kevin Gardner did knowingly cause physical harm to another person in violation of R.C. 2903.13 at 3652 Reading Road.

208.    On April 2, 2015, Theron Mayes did knowingly cause serious physical harm to another in violation of R.C. 2903.11 at 3652 Reading Road.

209.    On April 5, 2015, Ashley Harris did recklessly cause alarm by engaging in violent and turbulent behavior in violation of R.C. 2917.11 and resisted arrest at 3652 Reading Road.

210.    On April 15, 2015, Lacreasha Walton did knowingly cause physical harm to another person in violation of R.C. 2903.13 at 3652 Reading Road.

211.    3652 Reading Road has been issued an initial notice of nuisance activity under the Chapter 761 of the CMC, Chronic Nuisance Premises.

212.    3652 Reading Road does not have a current abatement plan as required by CMC Section 761-3.

213.    The code violations, violence and nuisance conditions continue unabated at 3652 Reading Road.

## Burton Apartments – 1006 Burton Avenue

214.    The Burton Apartment Building is a multi-family structure located at 1006 Burton Avenue in the Avondale neighborhood of the City of Cincinnati.

215.    Burton provides affordable housing to approximately fifty-two (52) families through federal HUD project-based housing subsidies for each unit that houses a qualified resident.

216.    Since PE Burton purchased Burton in May 2013, the City has had increasing concerns about both criminal activity and nuisance conditions at the property.

217.    There exists at 1006 Burton violations of Chapter 1117 of the CMC including but not limited to outstanding vacate orders for several units at the property following a fire that took place in March 2015.  PE Burton was ordered to make the necessary repairs to the property within 30 days, but has failed to do so.

218.    The code violations and nuisance conditions continue unabated at 1006 Burton Avenue.

### COUNT I:  STATUTORY PUBLIC NUISANCE – UNFIT LIVING CONDITIONS
### (Ohio Revised Code Section 3767.41)

219.    The City incorporates by reference as if fully restated herein all of the allegations of the preceding paragraphs.

220.    2525 Victory Parkway is a menace to the public health, welfare, or safety; is structurally unsafe, unsanitary, or not provided with adequate safe egress; constitutes a fire hazard, is otherwise dangerous to human life, or is otherwise no longer fit and habitable; and its current use constitutes a hazard to the public health, welfare, or safety due to inadequate maintenance.

221.    The City of Cincinnati is entitled under R.C. 3767.41 to an order of remedial action in its favor and against Defendant PE Alms for 2525 Victory Parkway.

### COUNT II: COMMON LAW PUBLIC NUISANCE

222.    The City incorporates by reference as if fully restated herein all of the allegations of the preceding paragraphs.

223.    The PE Defendants have created and maintained a public nuisance at 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard and 1006 Burton Avenue through violations of the Ohio Revised Code and CMC relating to housing quality standards and by permitting criminal activity on the premises.

224.    The PE Defendants' negligent, reckless and intentional conduct significantly and unreasonably interferes with the public health, welfare and safety in Cincinnati.

{00174913-2}                                    31

225.    The PE Defendants' creation and maintenance of the public nuisance has produced a long-lasting effect which they know or reasonably should know has a significant effect on public health, welfare and safety in Cincinnati and the residents of Cincinnati have a common right to be free from such conduct.

226.    The PE Defendants' creation and maintenance of the nuisance has caused the City damage, including increased police, fire, health, emergency, and corrections costs for inspections and the cost of attempting to eliminate the hazard and decreased tax revenues resulting from the depreciated value of the affected homes and all surrounding real estate.

227.    The City of Cincinnati is entitled to an order of remedial action in its favor and against the PE Defendants for 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard and 1006 Burton Avenue.

### COUNT III: INJUNCTIVE RELIEF FOR OUTSTANDING BUILDING AND FIRE CODE VIOLATIONS (Ohio Revised Code Section 715.30)

228.    The City incorporates by reference as if fully restated herein all of the allegations of the preceding paragraphs.

229.    Conditions exist at 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, and 1990 Westwood Northern Boulevard and 1006 Burton Avenue in violation of Title XI (Building Code) of the CMC, as well as violations of CMC Chapter 1201 (the Cincinnati Fire Prevention Code) and 1601 (Quality of Life). Those violations constitute a hazard to public health, safety and welfare.

230.    Consequently, 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard and 1006 Burton Avenue constitute public nuisances.

231.    The PE Defendants, through recklessness and neglect, created and continue to contribute to the public nuisance.

232.    Upon information and belief, those conditions have not been remedied.

233.    Pursuant to R.C. 715.30, the City is entitled to an injunction to prevent or terminate any outstanding violations of the CMC related to code violations.

### COUNT IV: PUBLIC NUISANCE – DISORDERLY HOUSE
### (Ohio Revised Code Sections 3767.01 *et seq.*)

234.    The City incorporates by reference as if fully restated herein all of the allegations of the preceding paragraphs.

235.    2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard, 3652 Reading Road, and 2525 Victory Parkway constitute public nuisances as defined by R.C. 3767.01(C) pursuant to CMC Section 761-7.

236.    2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard, and 2525 Victory Parkway constitute public nuisances as defined by R.C. 3767.01(C) due to the commission of felony drug offenses pursuant to R.C. 3719.10 and CMC Section 911-5(d).

237.    2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard, 3652 Reading Road, and 2525 Victory Parkway constitute public nuisances as defined by R.C. 3767.12 as a habitual resort of thieves, burglars, robbers or persons involved in felonious conduct.

238.   2000 Westwood Northern Boulevard constitutes a public nuisance as defined by R.C. 3767.01(C) as a place where liquor is kept in violation of the law.

239.   Defendants have used, established, occupied or aided or abetted in the use, establishment, occupancy of or are currently using, establishing or occupying or aiding or abetting in the use, establishment, occupancy of a public nuisance and are therefore guilty of maintaining a public nuisance subject to abatement under R.C. Chapter 3767.

240.   The City, on information and belief, alleges that the criminal activity that has occurred at the properties unreasonably interferes with the public right to health, safety, peace and comfort, thereby creating a public nuisance.

241.   The City, on information and belief, alleges that the public nuisance that exists at the properties creates a potential and unreasonable risk of harm that has resulted in injury to others.

242.   The City, on information and belief, asserts that Defendants created, maintained, fostered or acquiesced to the public nuisance that exists at the properties and is therefore liable for the maintenance of the nuisance.

**WHEREFORE**, the City requests that this Court issue the following relief:

A.      Grant a preliminary and permanent judgment declaring 2525 Victory Parkway, Cincinnati, Ohio, constitutes public nuisance as defined by R.C. 3767.41.

B.      For an order granting a preliminary and permanent  injunction requiring Defendants to abate the public nuisance at 2525 Victory Parkway forthwith pursuant to R.C. 3767.41;

C.      Grant a preliminary and permanent judgment declaring 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, and 1990

Westwood Northern Boulevard including the building and any common areas, constitute public nuisance as defined by R.C. 3767.01.

D.     For an order granting a preliminary and permanent  injunction requiring Defendants to abate the public nuisances at 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, and 1990 Westwood Northern Boulevard forthwith pursuant to R.C. 3767.05(D);

E.     For an order appointing a receiver for 2525 Victory Parkway to abate the public nuisance if the Defendants fail to abate the public nuisance pursuant to R.C. 3767.41;

F.     Any other injunctive relief that may arise relating to the appointment of a receiver and abatement of the public nuisance including, but not limited to, providing access to 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard and 1006 Burton Avenue for an assessment by experts to determine the financial and constructive plan needed to remediate the conditions at the properties; to rehabilitate the buildings; and to perform such work and furnishing materials necessary to comply with the code and abate the public nuisance at the properties.

G.     For an order granting a preliminary and permanent  injunction pursuant to R.C. 715.30 requiring Defendants to comply with all health and safety requirements relating to Title XI of the CMC at 2525 Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard and 1006 Burton Avenue;

H.     For an order of remedial action under the City's common law nuisance claim in the City's favor and against the PE Defendants for the properties at 2525

Victory Parkway, 3652 Reading Road, 2000 Westwood Northern Boulevard, 1990 Westwood Northern Boulevard and 1006 Burton Avenue.

I.    For an order requiring the PE Defendants to pay the costs of this action, including attorneys' fees;

J.    Awarding the City such other extraordinary, declaratory and/or injunctive relief as permitted by law or equity as necessary to assure that the City has an effective remedy; and

K.    For such other and further relief as the Court deems equitable, just and proper.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**

**/s/ Mark R. Manning**
Jessica Powell (0073928)
Mark R. Manning (0088331)
Assistant City Solicitors
801 Plum Street, Room 214
Cincinnati, Ohio 45202
Phone: (513) 352-4576
Fax: (513) 352-1515
Email: mark.manning@cincinnati-oh.gov
*Trial attorneys for City of Cincinnati and*
*Relator for the State of Ohio*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2015, a true and accurate copy of the foregoing was filed electronically by CM/ECF electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or copies will be mailed to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's system.

**/s/ Mark R. Manning**
Mark R. Manning (0088331)